## BENSLEY *v.* ATWILL.

Where a deed is offered in evidence, which purports on its face to be a deed of bargain and sale for an alleged consideration, executed and acknowledged by the defendant, and on the same day recorded, it is some evidence to go to the jury of the delivery of such deed.

It is scarcely to be presumed that one man will execute to another a deed without the assent of that other.

In such case, it is for the jury to say whether the grantee had knowledge of the execution of the deed, or had given his assent thereto.

The grantor, by the execution and acknowledgment of the deed, admits the delivery.

Where A sold a lot of land to B, and delivered possession, and, in a written contract respecting the same, it was stipulated, among other things, that in the event that B should be dispossessed by legal judgment at any time within three years, A should pay back to B $2,000; and should suit be brought against B for the lot, then B should notify A of it, in order to enable him to assist in the defense of the title ; *Held,* that the giving of the notice by B to A of the institution of suit against B for the lot, was indispensable to enable B to recover of A on such contract.

Nor does it matter of what value this notice was to A, or whether it was of any value. In a Court of law, effect is to be given to the bargain according to its terms, and Courts of law cannot speculate upon the weight attached to one or another of the elements of an obligation.    A bound himself only in a given way, and can be held only by the bargain he made, at least in the form of this action.

In a suit on such contract, B should aver that he had been evicted after notice to A. The payment of the money is dependent upon this fact.

APPEAL from the Twelfth District, County of San Francisco.

The facts of the case sufficiently appear in the opinion of the Court.

*Shafter, Park & Heydenfeldt* for Appellant.

I. The Court was requested to charge that, " assuming the facts which the evidence tended to prove, there was no delivery of the deed executed by the plaintiff to Samuel Bensley, the grantee."

This instruction was refused. The Court very properly told the jury that a grantor could not force a deed upon the grantee; that assent of the grantee was essential; and left it to the jury to find whether there had in fact been such assent, or not.

*a.* The plaintiff was entitled to the instruction requested; for there was no conflict in the evidence on the question of " assent," and the facts that it intended to prove showed that there had been no assent as matter of law.

1. As there was no conflict in the testimony, the plaintiff could claim a judicial declaration as to the effect of the facts should the jury find them.   Whitney *v.* Synde, 16 Vt. 580, 586; Van Hoesen *v.* Van Alstyne, 3 Wend. 75; Pleasant *v.* Pendleton, 6 Rand. 473; 2 U. S. D., p. 169, sec. 270; Swartwilder *v.* U. S. Bank, 1 J. J. Marsh, 38.

2. The declaration or charge requested was correct; for if the facts which the evidence tended to prove, really existed, they precluded all idea of privity on the part of the grantee with the deed.   2 Hilliard's Ab. 283.   Nor can the effect of this refusal be evaded on the ground of the charge actually given; for that was clearly erroneous, inasmuch as it put the question of assent as an open question of fact to the jury, when there was no evidence tending to prove such assent.   Birney *v.* Boardman, 3 Vt. 236.

II. The Court told the jury that by the terms of the contract it was necessary for the plaintiff to prove that he had given reasonable notice to Atwill that Lick had sued in ejectment for the land.

This was telling the jury in effect, that the giving of such reasonable notice was a condition precedent to the right of recovery.

This was erroneous; for the giving of the notice was not a condition precedent, but an independent covenant merely.

*a.* The inclination of the law is against conditions precedent; for a failure results in forfeiture, whereas a breach of covenant results in compensation merely.

*b.* The contract, in speaking of the liability of Atwill to refund the money, first adopts the language of conditions, as follows: "Provided" that Bensley shall vigilantly defend.

Such defense was very likely a condition precedent. But immediately thereafter the language is changed; and, in that part which relates to the notice it is said, "It is further agreed."

*c.* The context has to do with the question of construction, and it can hardly be contended that the payment of taxes, assessments, etc., that are grouped under the "agreement" to give the notice, are conditions precedent. *Noscitur à Locies.*

*d.* Again: the giving of the notice does not constitute the entire consideration of Atwill's undertaking to refund, nor any considerable part of it; therefore, on established principles, the giving of the notice should not be construed as a condition precedent.

1. It does not in fact constitute the whole consideration of Atwill's undertaking. The bulk of the consideration consists in the payment of the $6,000, and in Bensley's engagement to defend efficiently against any suit that might be brought for the possession; and if such defense should be made in fact by Bensley, it would be a matter of no practical moment whether Atwill had notice of the pendency of the action, or not.

2. Assuming, then, that the fact is with us, that is—that the giving of the notice does not constitute the whole of the consideration of Atwill's undertaking—the contract is subjected to the rule of construction for which we contend. Boone *v.* Eyre, 1 H. Black. 273, note; Stavers *v.* Curling, 32 C. L. 153; Muldrow *v.* McClelland, 1 Littell, 1; Tompkins *v.* Elliott, 5 Wend. 496; 2 Smith's Leading Cases, 25; 2 Par. Contracts, 37.

Though in form the covenants may be dependent, yet to prevent injustice, they may be treated as independent. 2 Smith's L. C. 24.

*George F. & W. H. Sharp* for Respondent.

I. The Court charged the jury that the deed from appellant to his

15

brother, S. S. Bensley, "was not operative to pass the title, and that the lot in question had not been transferred;" which charge was more favorable to appellant than the law warrants.

The acts done by appellant, and by Brooks, with his authority, were a transfer in the sense of this clause of the agreement, and in violation of it.

In truth, the Court should have given the fifth request asked by respondent; as no dissent of S. S. Bensley was shown, it being for his benefit, it is presumed that he accepted the deed. The Lady Superior v. McNamara, 3 Barb. Chy. Rep. 378; Thompkins v. Wheeler, 16 Peters' Rep. 106, 119; Ingram v. Porter, 4 McCord Rep. 198.

After the deed was left for record with the County Recorder, he held it for S. S. Bensley, who alone was entitled to receive it. At least, the Recorder would have been justified in refusing to deliver it to appellant.

II. It was incumbent upon appellant to give notice of the suit of Lick against Bensley et al. to respondent, so that he might assist in the defense. The notice did not meet the requirements of the contract either in substance or time.

The respondent conveyed to appellant the lot by quitclaim, with full knowledge of the exact claim of Atwill to the lot. Hence the doctrine of *caveat emptor* applies. Gouverneur v. Elmendorff, 5 J. Ch. Rep. 84.

The return of the purchase money depended—1st. Upon appellant being dispossessed by legal and final process within three years. No return, if dispossessed after that time; so that the agreement was in fact to insure a three years' possession.

2d. That appellant would "faithfully, diligently and watchfully resist and defend any claim or infringement that might be made upon said premises, either by law or against law; and also, that appellant notified respondent of any claim made, so as to enable respondent to assist in defense of the title."

3d. That appellant would not transfer the lot without the written consent of respondent.

The clause of the agreement requiring appellant to defend and resist " any claim," is introduced by apt words to make the defense of the

claim a condition precedent. No particular words are required to make a condition precedent. It is to be gathered from the meaning of the parties, and it is apparent that the clause of the agreement in regard to notice is to be read with the clause as to the defense of any claim, and is wholly independent of any other. Atwill contracted expressly to have the right to furnish his aid, which might have been controlling in that suit, if allowed to use it effectively.

The Court below did not put the question to the jury as a condition precedent, nor did the jury find a verdict upon that ground. The Court simply made the giving of notice and the defense dependent.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

Action upon contract, dated twentieth July, 1853. Atwill conveyed to Bensley a lot in San Francisco for the sum of $6,000. A part was paid down, and Bensley's note taken for the balance, payable in three years after date. Atwill agreed to pay back the $2,000, and deliver up the note to be canceled in the event that Bensley should be dispossessed by legal judgment at any time during three years ensuing the date of the contract, provided that Bensley should vigilantly defend any suit that might be brought against him during the period of three years for the possession of the lot. Bensley agreed to pay the taxes on the lot; that he would not encumber it; that he would defray all law expenses; and that should a suit be brought against him, he would duly notify Atwill thereof, and that he would not convey the lot without the written consent of Atwill.

Issues of fact having been joined on the complaint and answer, it was specially referred to the jury to find upon the following questions: 1. Did Bensley vigilantly defend the action brought against him by one Lick, who sued, within the three years, for the recovery of the lot? 2. Did he give reasonable notice to Atwill of the pending of the suit? 3. Did Bensley convey the lot to his brother, Samuel Bensley, during the three years? 4. Was the plaintiff judicially dispossessed on the twentieth July, 1856?

The first question being, in effect, as it was treated, a question of

law, and passed upon in his (appellant's) favor, it is not necessary to notice it further.

On the second and third issues there was evidence, and instructions were given and refused by the Court, which are the subjects of review by us.

The first error assigned in this connection is the refusal of the Court to charge, at the instance of the plaintiff, " that assuming the facts which the evidence tended to prove, there was no delivery of the deed executed by the plaintiffs to Samuel Bensley, the grantee."

It is argued by the appellant that there was no conflict of proof on this point, and therefore the Court should have given this charge as the legal result of the facts.    This deed purports to be a deed of bargain and sale on an alleged consideration, executed and acknowledged by the defendant, and on the same day recorded.    This certainly is some evidence that the deed was perfected, and that it was intended to vest the title in the grantee.    He might, if ignorant of its execution at the time, have, at any time, assented to it.    It is scarcely to be presumed that one man will execute to another a deed without the assent of that other.    Mr. Brooks, the witness, does not say that the grantor had no knowledge of the execution of this deed.    We think the facts should have gone to the jury, for them to say whether the grantee had this knowledge, or had given, directly or otherwise, his assent ; and that the Court did not err, on the facts stated by the witness, in refusing to rule that the deed was never delivered.    Perhaps it would be too much, in any case where the testimony of a witness contradicts the written acknowledgment of a party introducing him, (as in this case, that a deed was delivered) and also the fair presumption from the nature of the transaction, for the Court to assume that the testimony of the witness is the fact, and to give effect to it as a legal conclusion.    In this case the plaintiff admitted, by the execution of the deed and his acknowledgment of it for record, that he delivered it.    The mere fact that the plaintiff was absent from the State, and that the deed was made at the instance of the grantor, or of the witness, is not conclusive evidence of its non-delivery.

The next error assigned is the instruction of the Court that it was

the duty of the plaintiff, by the terms of the contract, to prove that he had given reasonable notice to Atwill that Lick had sued in ejectment for the land.    This instruction depends upon the terms of the contract, which is in these words :

" *State of California, City of San Francisco,* ss.— Agreement entered into twentieth day of July, eighteen hundred and fifty-three, between Joseph F. Atwill, of said city and State, party of the first part, and John Bensley, also of San Francisco, party of the second part, witnesseth :

" Whereas, the said Joseph F. Atwill has sold to the party of the second part city lot number (1478) fourteen hundred and seventy-eight, as will appear by deed executed this day, for the sum of $6,000, in which deed the payment of the whole purchase money is acknowledged ; and whereas, furthermore, the party of the second part has executed a mortgage on the premises to secure the payment of four thousand dollars, being a balance of purchase money, and has also given his note for the same, payable three years from date, with fifteen per cent. interest from date per annum until paid, as will more fully appear by said mortgage and note executed this day ; and whereas, the said Atwill is willing to give the party of the second part a fair title ; now, it is fully agreed between said parties, as follows :    That if the party of the second part shall, by legal and final process, be dispossessed from the above conveyed premises, in consequence of the establishment of successful claim of ownership of said lot by any other party in a suit at law, any time within three years from this date, then the said Atwill will return the $2,000 cash he has received this day, and also the note of $4,000, and discharge the party of the second part forever ; and said Atwill be also discharged upon such payment from all liability to the party of the second part.

" Provided, nevertheless, and it is distinctly agreed upon by the party of the second part, in consideration of the above, that the said party of the second part retain possession of the said lot number 1478, and not suffer the same to be lost without faithfully, diligently and watchfully resisting and defending any claim or infringement made upon said premises, be it either by law or against law, whereby the

ownership of said lot may come in question. That the said party of the second part defray all such law expenses incurred by defending title and possession of said property ; and, should such suit result in being dispossessed of said lot, he shall have no recourse for the same upon the party of the first part, nor if the title be sustained in favor of the party of the second part.

" And it is further agreed, and distinctly understood, that the said party of the second part will pay all taxes and assessments and improve-ments on the same, and keep said property free of any incumbrance which may otherwise be created by the party of the second part, and also that the said party of the second part will duly notify the party of the first part, or his agents or assigns or administrators or executors, of any claim which may by law be made against said premises, so as to enable the party of the second part to assist in the defense of the title.   And it is also fully understood that the delivery of the said premises shall be equal to the interest of the said moneys paid by the party of the second part, and that the said Atwill is not to refund any taxes, assessments, improvements, lawyers' fees, or Court costs what-ever, in the event of the loss of said property by process of law or otherwise.

" And it is furthermore understood between the parties, that all that part wherein said Atwill agrees to refund any or all of the purchase money, be void if the said party of the second part transfer the premi-ses (lot No. 1,478) without the written consent of said Atwill pre-viously obtained, or the payment of the said four thousand dollars.

" Witness our hands and seals this 20th July, 1853.

" JOHN BENSLEY,      [SEAL.]

" JOSEPH F. ATWILL, [SEAL.]

" In presence of $\left\{ \begin{array}{l} \text{O. WILLIAMS,} \\ \text{A. B. PERKINS.''} \end{array} \right.$

Two things appear very prominently in this agreement :

*First.* That the grantor was only to be responsible after eviction upon or by final process, and that grantee should hold possession until then ; and,

*Second.* That the grantor should have reasonable notice of the

Bensley *v.* Atwill.

adverse claim.   If this sale of the lot had been by deed, with general warranty, in the usual form, and the grantee had been dispossessed by paramount title, he could not recover (unless he showed notice to his warrantor to defend) upon the production of the record of evict.   He must show, in addition to the record of eviction, that he was unable to resist the title upon which he was sued.   Here, however, the grantor makes a special covenant for himself.   He does not agree generally to defend the title.   Indeed, he does not agree to defend the title at all. He merely agrees to guarantee the possession for a stipulated period. He covenants to repay the purchase money only under particular circumstances, and in a given event.   There can be no doubt, if the eviction occurred after the three years, that the grantor would not have been liable at all.   The main thing seems to have been, not an eviction, but an eviction of a particular sort, or rather arising in a particular way.   The whole agreement seems to have been drawn in a spirit of jealous, almost of suspicious, caution in this respect.   Courts do not make contracts for men.   They are supposed to be able to make contracts for themselves ; and we do not see, if a man chooses to bind himself to pay money on a particular event, why he may not, also, as well give character to that event, and mark and describe it, and hold himself only bound by or after the event so defined ; or, in other words, why, if he were only bound, upon eviction of his grantee, to pay money, he may not, by express agreement, limit the obligation to an eviction after reasonable notice to him.   If the collocation of the words of this agreement were different, there would be no doubt; that is, if the grantor had said :  " I hereby agree, upon grantee's judicial eviction from the lot sold him—that eviction having been obtained after reasonable notice to me of the pending of the suit, etc.—to pay, etc.," no pleader would sue upon such an instrument without averring the performance of the condition.   Why should the agreement be differently construed because the words limiting and characterizing the obligation are introduced after the word " provided " in the article quoted ?   The sense was the same ; indeed, we presume, the draftsman supposed he had made this sense more emphatic by this form of statement.   We have noticed the criticism that the matter relied on by the respondent is introduced in the next paragraph after the word " provided ;" and

the inference that, therefore, this was an independent agreement. We think this is a mistake, and that the proviso was intended to embrace the whole succeeding portion of the agreement to the last clause.

Whether agreements are independent or dependent is sometimes difficult to determine. But in cases where one man agrees, in consideration of a future event or act, to do or not to do a thing, the happening of the event is usually a condition precedent to the enforcement of the obligation. The very and only cause whereby the liability of the defendant was to accrue was this eviction ; it was to constitute the sole or main ground of the grantee's recovery and claim for compensation. Unless and until evicted, there was no pretext of claim upon the defendant to pay or repay money. The covenant was for a certain sort of eviction, or an eviction had under particular circumstances. The eviction, thus described, was the condition on which the whole liability was founded. It was, therefore, indispensable for the plaintiff to show, in order to maintain his action, that this eviction had happened, a necessary element of which was this reasonable notice, as we have before intimated.

Nor does it matter of what value this notice was to the defendant, or whether it was of any value. In a Court of law, effect is to be given to the bargain according to its terms, and Courts of law cannot speculate upon the weight attached to one or another of the elements of an obligation. The defendant bound himself only in a given way, and can be held only by the bargain he made, at least in the form of this action. The instructions of the Court were unobjectionable, or, if any fault is to be found with them, the appellant cannot complain.

The evidence was conflicting, and it was for the jury to pass upon it. The Court below saw no reason to interfere with the verdict, and for reasons which have often been given, we cannot, in such cases as this, review its action.

The judgment is affirmed.

On a re-hearing of this case, the Court, by BALDWIN, J., and TERRY, C. J., concurring, delivered the following opinion :

We have re-considered this case at the earnest instance of the appellant. We remain, after examining his argument, of the same opinion

as before.   The decision we have made must, of course, be regarded in connection with, and limited by, the precise facts of that case.   The language of the agreement is very guarded.   The evident intent of Atwill, in guaranteeing against an eviction within the period limited, was to guard against a collusive judgment.   He agreed to pay back the purchase money on a carefully defined condition, viz.: On a *judicial eviction within the time, and* obtained after notice to him.   If " common sense " is applied to the language he used, it amounts to this : " I will repay you $2,000 on your being evicted by judgment after notice to me."   Does this mean that he will pay it without *any* eviction, on a mere showing of a paramount title ?   Does it mean, any more, *any* kind of judicial eviction—with or without notice ?   These questions answer themselves.   What Atwill warranted was not the title ; it was the possession ; and he did not unconditionally warrant the possession, but only on a condition which he expressed.   How, then, can he be held, except on his own terms, for a violation of his own contract made and qualified *in* his own way ?   Is it not plain, that a party suing for a breach of this covenant, must aver that the warrantee had been evicted after notice to warrantor, and warrantor had failed to pay the sum stipulated ?   The payment of the money is absolutely dependent upon these facts.

The petition is denied.